**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X
                                                           :
In re:                                                     :    Chapter 11
                                                           :
RELATIVITY FASHION, LLC, *et al.,*                         :    Case No. 15-11989 (MEW)
                                                           :
                          Debtors.                         :    (Jointly Administered)
                                                           :
-----------------------------------------------------------X
                                                           :
Relativity Holdings, LLC                                   :
                                                           :
                                                           :
                          Plaintiffs,                      :    Adv. Proc. No. 15-1361 (MEW)
                                                           :
v.                                                         :
                                                           :
VII Peaks Capital, LLC,                                    :
                                                           :
                          Defendant.                       :
-----------------------------------------------------------X

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S**
**STATEMENT OF UNCONTESTED FACTS**

    Pursuant to Rule 7056-1(c) of the Local Rules for the United States Bankruptcy Court for

the Southern District of New York (the "Local Rules"), Plaintiff Relativity Holdings, LLC

("Relativity"), by and through its undersigned attorneys, hereby submits the following responses

and objections to Defendant VII Peaks Capital LLC's ("VII Peaks") Statement of Uncontested

Facts [Doc. 30].

    1.      Relativity Holdings, LLC ("Relativity") filed for Chapter 11 bankruptcy
protection on July 30, 2015 and is attempting to reorganize through a series of financing
transactions. (Ch. 11 Docket Entry Nos. 1, 992).

**RESPONSE:** Undisputed that Relativity and certain of its affiliates filed for Chapter 11 bankruptcy protection on July 30, 2015.  The Court has since confirmed the proposed plan of reorganization per its February 8, 2016 Order, and the Plan took effect on April 14, 2016.

2.      Ryan Kavanaugh ("Kavanaugh") is the CEO of Relativity. (Adv. Pro. Docket Entry No. 3, Van Durrer Declaration ¶ 1 (filed October 20, 2015) (hereafter the "October 20 Durrer Declaration")).

**RESPONSE:** Undisputed.

3.      VII Peaks Capital, LLC ("VII Peaks") is an alternative fixed income and private equity manager.  (Declaration of Gurpreet Chandhoke, ¶ 4).  Gurpreet Chandhoke ("Chandhoke") is the manager of VII Peaks (Adv. Pro. Docket Entry No. 29, Gurpreet Chandhoke Declaration, ¶ 1 (hereafter the "Chandhoke Declaration")).

**RESPONSE:** Undisputed.

4.      Prior to Relativity's bankruptcy filing, VII Peaks' clients had invested $12.5 million in Relativity.  (Chandhoke Declaration, ¶ 5).

**RESPONSE:** Undisputed.

5.      Shortly after VII Peaks' investment, Chandhoke was made a member of Relativity's Board of Directors.  (Chandhoke Declaration, ¶ 5).

**RESPONSE:** Undisputed.

6.      In September 2015, Relativity and VII Peaks began discussions concerning an additional potential infusion of funds for Relativity's reorganization plan, which was to be part of a larger equity-based transaction.  (Chandhoke Declaration, ¶ 6).

**RESPONSE:** Undisputed that, Relativity and VII Peaks began discussions in September 2015 concerning an additional potential infusion of funds for Relativity's reorganization plan.  Disputed that this infusion "was to be part of a larger equity-based transaction."  Declaration of Van C. Durrer, II, dated June 27, 2016 ¶¶ 5-6, 8-15 (hereafter the "June 27 Durrer Declaration").

7.      The amount of the new potential investment in Relativity under discussion by VII Peaks was originally $25 million.  (Chandhoke Declaration, ¶ 7).

**RESPONSE:**  Undisputed that a funding amount of $25 million figure was discussed, but the characterization that this was under discussion "originally" is ambiguous and disputed. The first time the $25 million figure appeared in writing was on October 1, 2015 in an email from Mr. Durrer to Mr. Chandhoke at 11:40 AM CDT.  (Chandhoke Declaration, Exs. 2, 2A)

8.      On October 1, 2015, Van Durrer ("Durrer"), legal counsel for Kavanaugh, sent an e-mail to Chandhoke, attaching two documents: an "Equity Commitment Letter" (the "First Draft Commitment Letter") and a single "Term Sheet" (the "October 1 Term Sheet") as Exhibit A to the First Draft Commitment Letter.  (Chandhoke Declaration, ¶ 8, Exs. 1, 1A – 1B).

**RESPONSE:**  Undisputed that Mr. Durrer sent the email and two attachments on October 1, 2015 at 9:25 AM CDT, but disputed as to the characterization that the Commitment Letter was intended to be a draft and the characterization that the Term Sheet was dated October 1.  (Chandhoke Declaration, Exs. 1, 1A, 1B).

9.      In the body of the e-mail, Durrer wrote, in part, "This is the form of commitment letter we need TODAY.  The term sheet (also attached) would be the exhibit."  (Chandhoke Declaration, ¶ 9, Ex. 1).

**RESPONSE:**  Undisputed that the body of the October 1, 2015 email at 9:25 AM CDT stated, in part, "This is the form of commitment we need TODAY.  The term sheet (also attached) would be the exhibit." (Chandhoke Declaration, Ex. 1).

10.      Durrer expressly invited Chandhoke to respond via e-mail, stating: "…if we can get an e-mail responding to this that your e-mail is DEEMED YOUR SIGNATURE to the document, that may work."  (Chandhoke Declaration, ¶ 10, Ex. 1).

**RESPONSE:**  Undisputed that the October 1, 2015 email at 9:25 AM CDT stated, in part "…if we can get an email responding to this that your email is DEEMED YOUR SIGNATURE to the document, that may work," but disputed to the extent that such a response was "expressly invited" by Mr. Durrer. (Chandhoke Declaration, Ex. 1).

11.      The First Draft Commitment Letter did not specifically identify the proposed investor or the amount of the investor's proposed investment, but instead provided highlighted blanks for placeholders in which such information was to be inserted.  The First Draft

Commitment Letter also did not include any terms as to what VII Peaks was to received in return for its anticipated investment.  (Chandhoke Declaration, ¶ 11, Ex. 1A).

**RESPONSE:**  Undisputed that the Commitment Letter sent by Mr. Durrer as an e-mail

attachment on October 1, 2015 at 9:25 AM CDT contained blank placeholders for the name of

the investor and the amount of the investor's Commitment, but disputed as to the

characterization that the Commitment Letter was intended to be a draft.  Any inference from the

above statement that the Commitment letter was to include any terms as to what VII Peaks was

to receive in return for its anticipated investment is disputed.  The Commitment Letter referenced

and attached a Term Sheet describing the transaction that, if the funding were secured, would

help to ensure that Relativity would continue as a going concern and preserve VII Peaks' original

$12.5 million investment.  (June 27 Durrer Declaration ¶ 5-6; Chandhoke Declaration, Exs. 1A,

1B).

12.    The First Draft Commitment Letter specifically stated that it was "subject to, and conditioned upon, (a) the provisions of the Term Sheet [*i.e.* the October 1 Term Sheet], and (b) the entry of an order of the Bankruptcy Court approving the Transaction."   (Chandhoke Declaration, ¶ 12, Ex. 1A).

**RESPONSE:**  Undisputed that VII Peaks has correctly quoted the Commitment Letter

sent by Mr. Durrer as an e-mail attachment on October 1, 2015 at 9:25 AM CDT, but disputed as

to the characterization that the Commitment Letter was intended to be a draft and the

characterization that the Term Sheet was dated October 1.  (Chandhoke Declaration, Ex. 1A).

13.    The October 1 Term Sheet was headed "PRIVILEGED AND CONFIDENTIAL Skadden Draft: 9/30/15, Summary of Proposed Terms & Conditions For Discussion Purposes Only." (Chandhoke Declaration, ¶ 13, Ex. 1B).  Similarly, the October 1 Term Sheet did not include any terms as to what VII Peaks was to receive in return for a potential investment. (Chandhoke Declaration, ¶ 13, Ex. 1B).

**RESPONSE:**  Undisputed that the Term Sheet sent by Mr. Durrer as an e-mail

attachment on October 1, 2015 at 9:25 AM CDT was headed "PRIVILEGED AND

CONFIDENTIAL Skadden Draft: 9/30/15, Summary of Proposed Restructuring Terms &

Conditions For Discussion Purposes Only," but disputed as to the characterization that the Term

Sheet was dated October 1. Any inference from the above statement that the Commitment letter

was to include any terms as to what VII Peaks was to receive in return for its anticipated

investment is disputed. The Letter referenced and attached a Term Sheet describing the

transaction that, if the funding were secured, would help to ensure that Relativity would continue

as a going concern and preserve VII Peaks' original $12.5 million investment. (June 27 Durrer

Declaration ¶¶ 5, 7-8; Chandhoke Declaration, Exs. 1A, 1B).

14.     Later on October 1, Durrer sent Chandhoke (and others) another e-mail
(Chandhoke Declaration, ¶ 14, Ex. 2), attaching a "revised commitment letter" (the "Second
Draft Commitment Letter") that: (a) filled in the amount of $25 million for the commitment; (b)
identified the investor as "VII Peaks Co-Optivist Income BDC II, Inc."; and (c) identified
Chandhoke as the "Principal" of VII Peaks Co-Optivist Income BDC II, Inc. on the signature
line. (Chandhoke Declaration, ¶ 14, Ex. 2A).

**RESPONSE:** Undisputed that the revised Commitment Letter sent by Mr. Durrer as an

e-mail attachment on October 1, 2015 at 11:40 AM CDT filled in the amount of $25 million for

the commitment, identified the investor as "VII Peaks Co-Optivist Income BDC II, Inc.," and

identified Chandhoke as the "Principal" of VII Peaks Co-Optivist Income BDC II, Inc. on the

signature line. Disputed as to any inference in the above statement that the revised Commitment

Letter was intended to be a draft. (Chandhoke Declaration, Exs. 1A, 1B).

15.     With the exception of the filled-in blanks, added signature line information, and a
minimal clarification of language in its first section, all other provisions of the Second Draft
Commitment Letter remained identical to those of the First Draft Commitment Letter.
(Chandhoke Declaration ¶ 15, Exs. 1A & 2A).

**RESPONSE:** Undisputed that the revised Commitment Letter sent by Mr. Durrer as an

e-mail attachment on October 1, 2015 at 11:40 AM CDT was identical to the Commitment Letter

sent by Mr. Durrer as an e-mail attachment on October 1, 2015 at 9:25 AM CDT, except for the

filled-in blanks (investor name and commitment amount), added signature line information, and a minimal clarification of language in the second paragraph.  Disputed as to any inference in the above statement that the two Commitment Letters were intended to be drafts.  (Chandhoke Declaration, Exs. 1A, 2A).

16.    Durrer's e-mail transmitting the Second Draft Commitment Letter on October 1 to Chandhoke did not attach a term sheet replacing the October 1 Term Sheet as Exhibit A or add any additional term sheet.  (Chandhoke Declaration, ¶ 16, Ex. 2).

**RESPONSE:**  Undisputed that the revised Commitment Letter sent by Mr. Durrer as an e-mail attachment on October 1, 2015 at 11:40 AM CDT did not attach a term sheet replacing the October 1 Term Sheet as Exhibit A or add any additional term sheet, but disputed as to any inference from the above statement that the revised Commitment Letter was intended to be a draft and the characterization that the Term Sheet was dated October 1.  (Chandhoke Declaration, Exs. 2, 2A).

17.    Later that afternoon, Chandhoke replied in an e-mail to Durrer that the investor identity was improperly stated, that the correct name was "VII Peaks Capital," and that Chandhoke "will correct and send executed version."  (Chandhoke Declaration ¶ 17, Ex. 3).

**RESPONSE:**  Undisputed that Mr. Chandhoke replied to Mr. Durrer in an e-mail on October 1, 2015 at 11:46 AM CDT stating "The entity name is VII Peaks Capital, we are the manager of all the funds.  I will correct and send executed version."  (Chandhoke Declaration, Ex. 3).

18.    Chandhoke followed up about forty-five minutes later (still on October 1) with another e-mail (the "Additional Terms E-mail") to Durrer stating:

> Per my discussion with Ryan [Kavanaugh] now and from before, I have attached the executed doc, (note its e-signature in the .pdf so I hope it prints out) based on the following agreed upon terms and conditions for NewCo
>
> 1) $25MM in debt to be provided by VII Peaks junior to Lender debt, no other debt would be added between us or above us
> 2) We would get full credit for our existing Series E $12.5MM of preferred equity

3) We would maintain our board seat and get one more Board seat (Ryan and I didn't get a chance to discuss this, but we don't have to knock our heads against the wall over this now)

4) We would get 5 domestic distribution slots a year for movies with Relativity distribution platform including P&A financing where needed, we can complete this agreement separately. (we have discussed this in the past)

5) Members of our team would service the Relativity movie and music library (this is very important for the financing and we have discussed this in the past)

(Chandhoke Declaration ¶ 18, Ex. 4).

      **RESPONSE:**  Undisputed that Mr. Chandhoke emailed Mr. Durrer on October 1, 2015 at

12:30 PM CDT stating:

> Per my discussion with Ryan now and from before, I have attached the executed doc, (note it's e-signature in the .pdf so I hope it prints out) based on the following agreed upon terms and conditions for NewCo
>
> 1) $25MM in debt to be provided by VII Peaks junior to Lender debt, no other debt would be added between us or above us
> 2) We would get full credit for our existing Series E $12.5MM of preferred equity
> 3) We would maintain our board seat and get one more Board seat (Ryan and I didn't get a chance to discuss this, but we don't have to knock our heads against the wall over this now)
> 4) We would get 5 domestic distribution slots a year for movies with Relativity distribution platform including P&A financing where needed, we can complete this agreement separately. (we have discussed this in the past)
> 5) Members of our team would service the Relativity movie and music library (this is very important for the financing and have discussed this in the past)

(Chandhoke Declaration, Ex. 4).

      19.      Chandhoke attached to his Additional Terms E-Mail the Second Draft Commitment Letter, incorporating his corrections to the name of the entity. (Chandhoke Declaration ¶ 19, Ex. 4A). Originally, the attachment was not executed, but Chandhoke remedied this omission minutes later on October 1 by sending the executed copy of the corrected Second Draft Commitment Letter (the "Executed Commitment Letter") to Durrer. (Chandhoke Declaration ¶ 19, Exs. 5 & 5A).

      **RESPONSE:**  Undisputed that Mr. Chandhoke failed to attach the properly revised and

signed Commitment Letter to his October 1, 2015 12:30 PM CDT email to Mr. Durrer, but later

sent an executed, revised Commitment Letter as an attachment to his October 1, 2015 12:34 PM

CDT email to Mr. Durrer.  Disputed as to any inference from the above statement that the

revised Commitment Letter was intended to be a draft.  (Chandhoke Declaration, Exs. 4, 4A, 5,

5A).

20.    After Chandhoke sent the Additional Terms E-mail, and still on October 1,
another attorney in Durrer's office, David Eisman ("Eisman"), e-mailed to Chandhoke (copying
Durrer) yet another unsigned form of commitment letter, harkening back to the Second Draft
Commitment Letter in that it again referenced the incorrect entity.  (Chandhoke Declaration ¶ 20,
Exs. 6 & 6A).  Again, this version did not include any substitute for the October 1 Term Sheet.
(Chandhoke Declaration ¶ 20, Ex. 6A).  Eisman did change the body of the commitment letter to
reference an Exhibit B and included a single page document entitled "Exhibit B – Terms of
Preferred Units" ("Preferred Units Terms").  (Chandhoke Declaration ¶ 20, Ex. 6A).

**RESPONSE:**  Undisputed that Mr. Eisman emailed Mr. Chandhoke on October 1, 2015

at 12:56 PM CDT attaching an unsigned Commitment Letter and stating:

> As discussed with Ryan and Van, here is the commitment letter including terms of
> preferred.  Note that paragraph 3 gives you flexibility to fund through one or more
> affiliates if the investor entity we designated is not the one you ultimately want to use (or
> feel free to amend the investor name).  Please email the executed letter to me or Van as
> soon as possible given the tight timetable.

(Chandhoke Declaration, Ex. 6).  Undisputed that the attached Commitment Letter did not

contain a substitute for the Term Sheet included in Mr. Durrer's email on October 1, 2015 at

9:25 AM CDT.  Undisputed that the attached Commitment Letter referenced and attached an

Exhibit B Terms of Preferred Units.  (Chandhoke Declaration, Exs. 6, 6A).

21.    Chandhoke immediately replied to Eisman's e-mail, stating that he "already sent
this out" – meaning the Executed Commitment Letter  and questioned Eisman as to whether this
was yet another new version. (Chandhoke Declaration ¶ 21, Ex. 7).

**RESPONSE:**  Undisputed that Mr. Chandhoke replied to Mr. Eisman on October 1, 2015

at 11:02 AM PDT stating "I already sent this out, is this a different version?"  (Chandhoke

Declaration, Ex. 7).

22.    Eisman replied minutes later by noting his inclusion of the Preferred Units Terms
as Exhibit B.  (Chandhoke Declaration, ¶ 22, Ex. 8).  Chandhoke then forwarded Eisman the
same Additional Terms E-mail Chandhoke had sent to Durrer and stated: "See below [*i.e.* the

text of the Additional Terms E-mail in the chain] and see attached [the Executed Commitment Letter] that I had sent already." (Chandhoke Declaration ¶ 22, Exs. 9 & 9A).  Chandhoke did not execute the version of the commitment letter sent by Eisman that referenced and attached the Preferred Units Terms as Exhibit B.  (Chandhoke Declaration ¶ 22).

**RESPONSE:**  Undisputed that Mr. Eisman replied to Mr. Chandhoke on October 1, 2015 at 1:02 PM CDT stating "I already sent this out, is this a  different version?" (Chandhoke Declaration, Ex. 8).  Undisputed that Mr. Eisman replied to Mr. Chandhoke on October 1, 2015 at 1:02 PM CDT stating "This has the preferred terms attached." (Chandhoke Declaration, Ex. 8).  Undisputed that Mr. Chandhoke emailed Mr. Eisman on October 1, 2015 at 1:05 PM CDT forwarding the October 1, 2015 11:34 AM PDT email and stating "See below and see attached that I had sent already." (Chandhoke Declaration, Ex. 7).  Undisputed that Mr. Chandhoke did not execute the version of the commitment letter attached to Mr. Eisman's October 1, 2015 12:56 PM CDT email.

23.    Later on October 1, Durrer sent a fourth version of the Commitment Letter to Chandhoke, seeking a "small change" that would provide that the lenders would have to approve and sign any amendment to the commitment letter.  Durrer also inquired if the page with the change could simply be substituted in and, if so, that Chandhoke "need not sign anything further."  This draft again bore the incorrect name of the VII Peaks entity, did not contain any reference to the Preferred Units Terms or any Exhibit B, and no exhibits or term sheets were attached other than a blank page placeholder for Exhibit A.  (Chandhoke Declaration ¶ 23, Ex. 10, 10A – 10B).

**RESPONSE:**  Undisputed that Mr. Durrer emailed Mr. Chandhoke on October 1, 2015 1:23 PM CDT stating "Here is a small change requested by the Cortland Lenders.  If you can confirm I can substitute this changed page, you need not sign anything further" and attaching a version of the Commitment Letter adding the Cortland Lenders to Paragraph 6.  Undisputed that the attached Commitment Letter contained the name "VII Peaks Co-Optivist Income BCS II, Inc.," did not reference or contain an Exhibit B, and the only attachment to the letter was a blank page placeholder for the Exhibit A Term Sheet.  (Chandhoke Declaration, Exs. 10, 10A, 10B).

24.    Chandhoke replied on October 1 that he would accept Durrer's proposed change and reminded Durrer of the correct entity name and asked Durrer to "refer to my executed letter that I sent" (*i.e.* the Executed Commitment Letter).  (Chandhoke Declaration, ¶ 24, Ex. 11).

**RESPONSE:**  Undisputed that Mr. Chandhoke replied to Mr. Durrer on October 1, 2015

1:27 PM CDT stating:

> I need to make sure you guys use the correct entity name, VII Peaks Capital, LLC. Please refer to my executed letter that I sent.  Please confirm via email that you understand the correct entity name. I am ok with the change if others in the financing group are."

(Chandhoke Declaration, Ex. 11).

25.    Chandhoke did agree on October 2, 2015 to increase the amount of VII Peaks' investment from $25 million to $30 million, and informed Durrer on a telephone call that Chandhoke agreed to substitute a new first page to the Executed Commitment Letter indicating the new amount. (Chandhoke Declaration, ¶ 25).

**RESPONSE:**  Undisputed.  (Chandhoke Declaration, ¶ 25; June 27 Durrer Declaration

¶¶ 13-15).

26.    Chandhoke never executed any version of the commitment letter at any time other than the Executed Commitment Letter (Chandhoke Declaration, Ex. 5A), did not withdraw the terms in the Additional Terms E-mail, and never agreed to the substitution of any page containing a reference to the Preferred Units Terms or an Exhibit B.  The Executed Commitment Letter upon which Relativity relies in its Complaint neither references nor includes the Preferred Units Terms or an Exhibit B. (Chandhoke Declaration, ¶ 26).

**RESPONSE:**  Undisputed that Mr. Chandhoke executed the Commitment Letter on

October 1, 2015 at 12:34 PM CDT (Chandhoke Declaration, Ex. 5, 5A), but this statement is

disputed to the extent that it omits two additional versions of the Commitment Letter that Mr.

Chandhoke executed after amendment (using the same signature page).  The first additional

version was the addition of the Cortland Lenders amendment to Paragraph 6 of the Commitment

letter, which Mr. Chandhoke authorized on October 1, 2015 at 1:27 PM CDT.  (Chandhoke

Declaration, Exs 10, 10A, 10B, 11).   The second additional version was to increase VII Peaks'

funding amount from $25 million to $30 million, which Mr. Chandhoke authorized on an

October 2, 2015 telephone call with Mr. Durrer. (Chandhoke Declaration ¶ 25). Disputed that

the terms in the Additional Terms E-mail were the terms for the VII Peaks' $30 million

investment pursuant to the Committment Letter, and disputed that Mr. Chandhoke did not

withdraw the terms in the Additional Terms E-mail. (June 27 Durrer Declaration ¶ 15). In his

Declaration, Mr. Chandhoke admits that he and Mr. Durrer came to an agreement on October 2,

2015 to increase the amount of VII Peaks' investment from $25 million to $30 million.

(Chandhoke Declaration ¶ 25). Moreover, the first of the alleged five terms in the Additional

Terms E-mail is "$25MM in debt to be provided by VII Peaks," which is incompatible with the

new agreement for VII Peaks to fund $30 million. (Chandhoke Declaration, ¶ 25; Chandhoke

Declaration, Ex. 4; June 27 Durrer Declaration ¶¶ 13-15). Disputed that there is no agreement by

VII Peaks to substitute any page containing a reference to the Preferred Units Terms or an

Exhibit B. (Chandhoke Declaration, Exh. 9). Undisputed that the Executed Commitment Letter

upon which Relativity relies in its Complaint neither references nor includes the Preferred Units

Terms or an Exhibit B.

27.    Neither before nor after Chandhoke executed and e-mailed the Executed
Commitment Letter was the October 1 Term Sheet replaced with a new version in any of the e-
mails sent on October 1. (Chandhoke Declaration ¶ 27).

**RESPONSE:**  Undisputed that the term sheet emailed by Mr. Durrer to Mr. Chandhoke

on October 1, 2015 at 9:25 AM CDT was not replaced with a new version in any of the emails

sent on October 1, 2015, but disputed as to the characterization that the Term Sheet was dated

October 1. (Chandhoke Declaration, Exs. 1, 1A).

28.    On October 4, in advance of a conference call to discuss the potential transaction,
Chandhoke and the other directors of Relativity received an e-mail from Relativity attaching the
commitment letters executed by the various investors and for the first time a new version of the
Term Sheet attached to the Commitment Letters as Exhibit A (the "October 4 Term Sheet").

(Chandhoke Declaration ¶ 28, Ex. 12).  Relativity sent a superseding set of the attached
documents minutes thereafter.  (Chandhoke Declaration ¶ 28, Exs. 13, 13A – 13G).  The October
4 Term Sheet did not recite any terms as to what VII Peaks was to receive in return for its
potential investment. (Chandhoke Declaration ¶ 28, Ex. 13B).

**RESPONSE:**  Undisputed as to the first two sentences, but immaterial to the formation

of the October 2, 2015 agreement between Chandhoke and Durrer.  (Chandhoke Declaration

¶ 25, June 27 Durrer Declaration ¶¶ 13-15).  Disputed that the October 4 Term Sheet did not

recite any terms as to what VII Peaks was to receive in return for its potential investment, as the

Term Sheet described the transaction that, if the funding were secured, would help to ensure that

Relativity would continue as a going concern and preserve VII Peaks' original $12.5 million

investment.  (June 27 Durrer Declaration ¶¶ 6, 13; Chandhoke Declaration, Ex. 13B).

29.    The October 4 Term Sheet differs from the October 1 Term Sheet in several
respects; for example, it involves different amounts, a different interest rate and terms of a
referenced note.  (Chandhoke Declaration ¶ 29, Exs. 1B & 13B).

**RESPONSE:**  Undisputed, but immaterial to the formation of the October 2, 2015

agreement between Mr. Chandhoke and Mr. Durrer that the term sheet distributed on October 1,

2015 at 9:25 AM CDT (Chandhoke Declaration, Ex. 1B) and the term sheet distributed on

October 4, 2015 at 11:29 AM CDT (Chandhoke Declaration, Ex. 13B) contained different

amounts, a different interest rate, and terms of a referenced note.  (Chandhoke Declaration ¶ 25,

June 27 Durrer Declaration ¶¶ 13-15).  Disputed as to the characterization that the Term Sheet

was dated October 1.

30.    Also on October 4, Chandhoke received, for the first time, an Investor Term Sheet
("Investor Term Sheet") which summarized certain aspects of the October 4 Term Sheet and
provided for certain other investors to acquire Relativity's debt from lenders, granted warrants to
certain other investors, and identified equity interests to be held by other investors.  The Investor
Term Sheet was not executed by VII Peaks.  (Chandhoke Declaration ¶ 30, Ex. 13A).

**RESPONSE:**  Undisputed that the Investor Term Sheet summarized certain aspects of

the attached TLA/TLB Term Sheet, but immaterial to the formation of the October 2, 2015

agreement between Mr. Chandhoke and Mr. Durrer.  (Chandhoke Declaration ¶ 25; June 27

Durrer Declaration ¶¶ 13-15).  Undisputed that the Investor Term Sheet was not executed by VII

Peaks, but immaterial as to the formation of the October 2, 2015 agreement between Chandhoke

and Durrer.  (Chandhoke Declaration ¶ 25; June 27 Durrer Declaration ¶¶ 13-15).  Disputed as to

all other aspects of this statement and characterizations therein.

31.     From October 4 to October 16, negotiations continued, including on the issues of
whether VII Peaks' investment would be debt only or debt and equity, and if Chandhoke's
Additional Terms E-mail were to be included within the terms of the deal, but agreement was
never reached on either of those issues.  (Chandhoke Declaration ¶ 31).

**RESPONSE:**  Undisputed, but immaterial to the formation of the October 2, 2015

agreement between Mr. Chandhoke and Mr. Durrer.  (Chandhoke Declaration ¶ 25; June 27

Durrer Declaration ¶¶ 13-15).

32.     On October 15, a series of e-mails were exchanged in which Kavanaugh informed
Chandhoke that VII Peaks would not have any equity ownership in the new company.  In one
such e-mail, Kavanaugh labeled VII Peaks' position "essentially debt just called equity."
(Chandhoke Declaration ¶ 32, Ex. 14).

**RESPONSE:**  Undisputed, but immaterial to the formation of the October 2, 2015

agreement between Mr. Chandhoke and Mr. Durrer (Chandhoke Declaration ¶ 25; June 27

Durrer Declaration ¶¶ 13-15) that a series of emails were exchanged on October 15, 2015

between Kavanaugh, Brent Almond, and Chandhoke.  (Chandhoke Declaration, Ex. 14).

Disputed that "Kavanaugh informed Chandhoke that VII Peaks would not have any equity

ownership in the new company."  Mr. Kavanaugh's statement that "Seven peaks will lose it's

entire investment and of course it's board Seats" was conditioned on VII Peaks' refusal to fund

according to its unconditional commitment of $30 million. (Chandhoke Declaration, Ex. 14; June

27 Durrer Declaration ¶¶ 6, 13).  Undisputed that VII Peaks has correctly, but incompletely,

quoted Mr. Kavanaugh's statement in his October 15, 2015 email at 8:14 AM GMT that "[Mr.

Chandhoke] was getting 5 slots when he was funding 350m dollars, zero chance he's getting 5

slots for 30 million of what is essentially debt just called equity." (Chandhoke Declaration, Ex.

14).

33.     However, in an October 4 e-mail from Kavanaugh to Durrer and Chandhoke,
Kavanaugh addressed changes to the proposed transaction, including that "Gurpreet's 30m" was
to be a combination of debt and equity. (Chandhoke Declaration ¶ 33, Ex. 15).

**RESPONSE:** Undisputed, but immaterial to the formation of the October 2, 2015

agreement between Chandhoke and Durrer. (Chandhoke Declaration ¶ 25; June 27 Durrer

Declaration ¶¶ 13-15). VII Peaks has correctly, but incompletely quoted Mr. Kavanaugh's email

on October 4, 2015 at 10:45 PM CDT to Mr. Chandhoke, Mr. Durrer, and Joe Nicholas. The

language of this email is clear that discussions were still ongoing, and that Mr. Kavanaugh's

email was in response to an email from Mr. Chandhoke to Mr. Durrer six months prior on April

10, 2015, a day on which (as indicated by the email's subject line) there was a Relativity

Holdings Board Call. In this April 10 email, Mr. Chandhoke stated "Ryan and I spoke. Our

investment should have same terms as Joe and Elliott." Mr. Kavanaugh responded on October 4,

2015, which indicates that the "proposed transaction" these potential changes addressed was a

potential post-funding concerning the interests VII Peaks would have in NewCo, rather than the

funding agreement between VII Peaks and Relativity. (Chandhoke Declaration, Exhibit 15; June

27 Durrer Declaration ¶ 6)

34.     On October 15, Kavanaugh sent an e-mail to Chandhoke and Durrer stating that
the Additional Terms E-mail "doesn't work at all." (Chandhoke Declaration ¶ 34, Ex. 16).
Kavanaugh followed up with another e-mail less than a minute later stating, "This is NOT THE
DEAL" (emphasis in original). (Chandhoke Declaration ¶ 34, Ex. 17).

**RESPONSE:** Undisputed, but immaterial to the formation of the October 2, 2015

agreement between Chandhoke and Durrer. (Chandhoke Declaration ¶ 25; June 27 Durrer

Declaration ¶¶ 13-15).

35.    Approximately an hour later, Chandhoke responded to Kavanaugh via e-mail, stating:

> If this is not the deal as clearly outlined in my written e-mail from Thu Oct 1st [*i.e.* the Additional Terms E-mail], then we cannot invest. These are specific requirements of our client who cannot invest otherwise. We are not renegotiating the deal. We were informed on last board call that if VII Peaks and Company do not agree to terms, Company has lots of other choices for investors, so move forward with them.

(Chandhoke Declaration ¶ 35, Ex. 18).

**RESPONSE:**  Undisputed, but immaterial to the formation of the October 2, 2015

agreement between Chandhoke and Durrer (Chandhoke Declaration ¶ 25; June 27 Durrer

Declaration ¶¶ 13-15), that VII Peaks has correctly quoted Chandhoke's October 15, 2015 7:33

AM PDT email to Kavanaugh.

36.    The next day, Durrer sent an e-mail to Chandhoke asserting that the VII Peaks commitment letter was enforceable without the terms recited in the Additional Term E-mail. Durrer attached (1) the Executed Commitment Letter with the October 4 Term Sheet and (2) the Preferred Units Terms, notwithstanding that the Executed Commitment Letter does not refer to or attach either the Preferred Units Terms or an Exhibit B.  (Chandhoke Declaration ¶ 36, Exs. 19, 19A – 19B).

**RESPONSE:**  Undisputed that Mr. Durrer sent an email to Mr. Chandhoke on October

16, 2015 attaching a Commitment Letter executed by Mr. Chandhoke with a $30 million

commitment and the Preferred Term sheet and stating "Attached is a copy of your commitment

letter.  As you will see, it is unconditional.  It is likewise enforceable directly by the Cortland

Lenders."  Undisputed that the Commitment Letter does not reference or attach either the

Preferred Units Terms or an Exhibits B.  (Chandhoke Declaration, Exs. 19, 19A – 19B).

37.    VII Peaks did not provide funding to Relativity thereafter.  (Chandhoke Declaration ¶ 37).

**RESPONSE:**  Undisputed.

38.    Relativity filed its Adversary Complaint on October 19, bringing a single count for breach of contract and seeking specific performance.

**RESPONSE:**  Undisputed that Relativity filed its Adversary Complaint on October 19,

2016.  The Complaint asserted a single count for breach of contract and sought specific

performance and other appropriate relief.  (Adv. Pro. Docket Entry No. 1).

Dated:  June 27, 2016                              Respectfully submitted,
       New York, New York

                                         JONES DAY

By:  _____
                         Todd R. Geremia
                         JONES DAY
                         250 Vesey Street
                         New York, New York 10281-1047
                         Telephone: (212) 326-3939
                         Facsimile:  (212) 755-7306

                         *Attorneys for Plaintiff,*
                         *Relativity Holdings, LLC*

**CERTIFICATE OF SERVICE**

I, Todd R. Geremia certify that on June 27, 2016, a true and correct copy of the foregoing

document was served upon Defendant's counsel of record in this action via the Court's CM/ECF

system, email and/or overnight mail.


Dated:  June 27, 2016                                    */s/ Todd R. Geremia*
      New York, New York                           Todd R. Geremia